FILED
2009 Mar-06  AM 09:10
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **CHERYL C. BLACK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  4:08-CV-0050-RDP** |
| | } | |
| **MICHAEL J. ASTRUE, Commissioner** | } | |
| **of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

## MEMORANDUM OPINION

Plaintiff Cheryl C. Black brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act. *See* 42 U.S.C. §§ 405(g), 1383(c).

### I.  Proceedings Below

Plaintiff filed her application for a period of disability and DIB on November 1, 2002. (Tr. 59).  Plaintiff initially alleged a disability onset date of November 1, 2002 in her application for Title II disability insurance benefits. (Tr. 62).   Plaintiff's application was denied initially.  (Tr. 37-43). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  (Tr. 47, 49).  The hearing was held on May 17, 2006 in Anniston, Alabama.  (Tr. 437-92).  In the September 27, 2006 decision, the ALJ determined that Plaintiff was not eligible for a period of disability or DIB because she failed to meet the disability requirements of the Act and retained the residual functional capacity ("RFC") to perform sedentary work with restrictions. (Tr. 33-34). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 6-8), that

decision became the final decision of the Commissioner, and therefore a proper subject of this court's review.

At the time of the hearing in question, Plaintiff was 39 years old with a high school education and two years of college. (Tr. 443-44). Plaintiff had previously worked as an operations manager at a restaurant and as a secretary. (Tr. 68, 84). Plaintiff alleges that she suffers from lupus, fibromyalgia, sleep apnea, osteoarthritis, asthma, and pain from a back injury. (Tr. 67). According to Plaintiff, due to these problems she has been unable to engage in substantial gainful activity since July 2001. (Tr. 67).

In April 1998, Dr. Stanford Faulkner performed surgery on Plaintiff's herniated disc. (Tr. 126). In October 1999, Dr. Faulkner stated that Plaintiff had degenerative disc disease at L5-S1 and gross decreased range of motion in the lumbar spine. (Tr. 120). Dr. Stanford fitted Plaintiff for a back brace at that time. (*Id.*). In March 2000, Dr. Karin Straaton diagnosed Plaintiff with inflammatory arthritis most likely due to rheumatoid arthritis. (Tr. 282). In April 2000, Dr. Straaton diagnosed Plaintiff with presumptive Parvovirus and arthritis in a setting also of a positive ANA. (Tr. 273). In October and November 2002, Dr. Straaton diagnosed Plaintiff with positive ANA and fibromyalgia, and referred Plaintiff for an echocardiogram and to pulmonologist, Dr. Vines. (Tr. 219-26). Plaintiff also visited Dr. Adeeb Edward Thomas between January and October 2002 for treatment of obesity, headaches, and fatigue during which time Dr. Thomas noted that Plaintiff had a recent Fifth's disease infection that caused chronic swelling in her hands and feet and arthralgias. (Tr. 194). Dr. Thomas also treated Plaintiff for a knot on the back of her neck, which he diagnosed as a probable lipoma. (Tr. 183-87). Plaintiff was admitted to the emergency room at Medical Center East on August 30, 2002 with chest pains and difficulty breathing. (Tr. 145-59). She was diagnosed

2

with acute dyspnea and discharged in stable condition.  (*Id.*).  On February 27, 2003, Plaintiff was seen by Dr. Hemant Sinha for an evaluation for disability.  Dr. Sinha stated that there were "very few if any objective evidence of significant bronchial spasm or significant arthritis, but she is on medications as noted above to help her arthritis."[1]  (Tr. 218).  Dr. Sinha further stated that these medications may have given Plaintiff some systemic symptoms of "generally not feeling well" that would be in line with her complaints.  (*Id.*).

On June 18, 2003, Dr. James Tuck noted that Plaintiff complained to him of severe generalized pain for which he prescribed Lortab and encouraged Plaintiff to continue using Darvocet. (Tr. 368).  On September 10, 2003, Plaintiff reported to Dr. Tuck that she had generalized weakness and nausea.  (*Id.*).  At this time, Dr. Tuck recommended continued use of Darvocet and Plaquenil. (*Id.*).  On January 31, 2004, radiologist Dr. William Varnell noted Plaintiff's left kidney appeared to be mildly enlarged with some mild perinephric stranding as well as mild pyelocaliectasis, and that the proximal left ureter was mildly enlarged.  (Tr. 369).  Dr. Varnell concluded that there was a mild uteral obstruction.  (*Id.*).  Dr. Tuck noted on August 25, 2005, that Plaintiff had bariatric surgery that resulted in a weight loss of over 100 pounds, and that she was feeling much better emotionally.  (Tr. 378).  Dr. Tuck also noted at this time that Plaintiff had recently returned from a trip to Australia. (*Id.*).  Plaintiff reported to Dr. Kennedy that she felt much better in the Australian climate.  (Tr. 392). On May 19, 2006, Dr. Tuck met with Plaintiff and found that she was doing "quite well" after her bariatric surgery, but that she was also affected by chronic pain.  (Tr. 384).  Dr. Tuck also completed a Physical Capacities Evaluation form drafted by Plaintiff's attorney in which he stated that Plaintiff

---

[1]Dr. Sinha reported that Plaintiff, at that time, was taking Hydroxy-chloroquine, Nortriptyline, Darvocet, Clonazepam, Acidophilus, Predisone, and using a CPAP.

could only sit (not continuously) for two hours total out of an eight hour day, and stand or walk for two hours total of an eight hour day.  (Tr. 385).  Dr. Tuck also indicated that Plaintiff's pain was present and "found to be intractable and virtually incapacitating."  (Tr. 386).  Dr. Tuck also indicated that fatigue and weakness are present to such an extent as to negatively affect Plaintiff's ability to work and to require bedrest and/or medication.  (*Id*.).

## II.  ALJ Decision

Determination of disability under the Act requires a five step analysis.  *See* 20 C.F.R. § 404.1 *et. seq.*   First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's RFC can meet the physical and mental demands of past work.  The claimant's RFC is what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and RFC are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982)

(other citations omitted).   Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since November 1, 2002.  (Tr. 33).  Plaintiff met the disability insured status requirements of the Act on November 1, 2002, and acquired sufficient quarters of coverage to remain fully insured through at least December 31, 2006.  (Tr. 21).  Based upon the medical evidence presented, the ALJ concluded that Plaintiff has fibromyalgia, obstructive sleep apnea, lumbar degenerative disc disease, history of myalgias, arthralgias, history of positive ANA, and restless leg syndrome which are "severe" impairments as defined by the Social Security Act.  (Tr. 33-34).  Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements for any impairment in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4. (Tr. 34).

According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of their inconsistency with the medical evidence established in the record and Plaintiff's own statements.   (Tr. 34).   After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retains the RFC to perform the exertional demands of sedentary work with the following limitations: she is unable to work around unprotected heights, or dangerous, moving machinery; she requires the need to alternate sitting and standing at will at the work place; and she needs to work in a temperature-controlled environment with only occasional need for fine and gross manipulation, stooping, bending, squatting, climbing, and pushing/pulling of the upper extremities. (Tr. 34).  The ALJ concluded that Plaintiff's medical condition is not of such severity that it can

5

reasonably be expected to give rise to pain greater than mild to moderate. (Tr. 32). Although the ALJ found that Plaintiff is unable to perform her past relevant work, there are nonetheless a significant number of jobs in the national economy which Plaintiff could perform, all of which allow Plaintiff to work with the above-mentioned limitations. (Tr. 34). Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that Plaintiff, therefore, is not entitled to a period of benefits. (*Id.*).

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. #9, p. 13). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ failed to accord proper weight to Dr. Tuck's opinion regarding the side effects of prescribed medications in the disability determination; (2) and the ALJ failed to accord great weight to Dr. Tuck's opinion regarding the non-exertional impairments of fatigue and pain, thereby ignoring Social Security Ruling 96-7p. (Doc. #9, p. 11).

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings.  *See Martin*, 894 F.2d at 1529.  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance."  *Lamb*, 847 F.2d at 701.  For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V.  Discussion

### A.  The ALJ Did Accord Proper Weight to Dr. Tuck's Opinion Regarding the Side Effects of Prescribed Medications in the Disability Determination.

Plaintiff argues that the ALJ failed to accord proper weight to the opinion of her treating physician when he found that she was disabled from medication side effects.  (Doc. #9, p. 11).  Plaintiff also argues that the ALJ's reasons for doing so cannot be based on substantial evidence.  (*Id.*).  Plaintiff cites 20 CFR Part 404, Subpart P, Appendix 1, § 11.00 to establish that side effects of medications can be disabling.  (*Id.*).  The ALJ stated that medication side effects should be considered as a factor relevant to evaluating a claimant's symptoms.  (Tr. 30).  The ALJ cited *Holt v. Sullivan* for the standard in evaluating subjective complaints of pain and other symptoms like side

7

effects. (Tr. 30). The standard requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221 (11th Cir. 1991).

Plaintiff testified that Plaquenil and Effexor had many adverse effects, such as extreme weight gain, attention and memory problems, a desire to not get out of bed, nausea and stomach pains. (Tr. 446-47). Plaintiff also testified that her current medications were limited due to her bariatric surgery. (Tr. 447). The ALJ discussed Dr. Sinha's finding that Plaintiff's medications in February 2003 may have contributed to her not feeling well, but the ALJ also noted that Dr. Sinha did not find any significant limitation with regard to Plaintiff walking, standing, lifting, or bending. (Tr. 26). The ALJ noted that Dr. Tuck had found that Plaintiff experienced medication side effects that limited her ability to work due to distraction, inattention, and drowsiness. (Tr. 29). Dr. Tuck indicated that Plaintiff was disabled from medication side effects when he selected the option "Drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc." on Plaintiff's evaluation form completed May 19, 2006, two days after the hearing. (Tr. 388).

The ALJ stated Plaintiff's statements regarding the severity of her impairments are not credible "in light of the reports of examining and treating practitioners, the findings made on examination, and the claimant's own testimony and statements." (Tr. 30). While the ALJ did not explicitly include complaints of side effects in that statement, he addressed that issue in much the same manner when he stated that the "record establishes that there were no complaints raised by the

8

claimant of any such adverse side effects with any of her medications other than her one-time prescription for Neurontin in April 2004." (Tr. 32, 393). Plaintiff had previously reported experiencing drowsiness from taking Darvocet (Tr. 72), but in a medication disclosure form dated the same day as the hearing, Plaintiff stated she was not taking Darvocet, but only Lortab and Toradol. (Tr. 114).

The ALJ did not find Plaintiff's subjective complaints credible because these complaints conflicted with the medical record, particularly that of Dr. Straaton who reported that Plaintiff had done well on her medication. (Tr. 30). The ALJ cited Plaintiff's admissions to Dr. Kennedy that she was doing well with her prescriptions of Ultracet and Flexeril. (Tr. 31, 392-93). The ALJ determined that Dr. Tuck's opinion that Plaintiff was disabled due to medication side effects was not credible against the record established by other physicians and against Plaintiff's own testimony of her daily activities. (Tr. 32). This court finds that the ALJ based his decision on substantial evidence and, on this point of argument, that decision is due to be affirmed.

**B.      The ALJ Properly Considered Dr. Tuck's Opinion Regarding the Non-Exertional Impairments of Fatigue and Pain Under Social Security Ruling 96-7p.**

Plaintiff argues that the ALJ should have accorded great weight to Dr. Tuck's opinion regarding the non-exertional impairments of fatigue and pain, consistent with both fibromyalgia and lupus. (Doc. #9 at 11). The ALJ determined that Dr. Tuck's opinion was "wholly inconsistent with the findings in his own treatment records [and] also contradicted by the findings of the [Plaintiff's] other treating and examining physicians . . . [and] are wholly inconsistent with and contradicted by the [Plaintiff's] own testimony and statements." (Tr. 31). For the reasons described below, this court finds the ALJ properly articulated his reasons for not granting Dr. Tuck's opinion dispositive weight.

9

Plaintiff argues that the ALJ failed to consider Social Security Ruling 96-7p in determining the credibility of Dr. Tuck's opinion.  In part, this Ruling requires the adjudicator to give specific reasons for the credibility and the reasons for that weight.  SSR 96-7p. The ALJ reviewed the medical record and found that allegations of disabling pain or fatigue were not credible when seen under the light of the entire record.  The ALJ cited the treatment records of Drs. Straation, Thomas, Albright, and Vines, and records from the Montclair Baptist Medical Center's Outpatient Rehab clinic, none of which documented any physical limitations or restrictions due to Plaintiff's fibromyalgia. (Tr. 30).  Dr. Straaton's records, in particular, showed that Plaintiff reported doing well with her medication.  (*Id.*).  The ALJ noted that Dr. Sinha reported very few if any objective evidence of significant arthritis, and that Plaintiff seemed to have no significant limitation on walking, standing, lifting, or bending.  (*Id.*).  Plaintiff's current treating physician, Dr. Kennedy, found no edema in her extremities and no synovitis in her joints.  (Tr. 31).  Dr. Goli found that Plaintiff had a normal spinal exam, good range of motion in the upper body, good range of motion in the legs, and the capacity for at least sedentary work. (*Id.*).  The ALJ noted treatment records from Dr. Vines that indicated Plaintiff was able to sleep while using the CPAP, and her restless leg syndrome was controlled with Klonopin.  (Tr. 32). However, Plaintiff testified that she no longer uses the CPAP, and records indicate she is no longer taking Klonopin, and for these reasons, the ALJ determined that the severity of these conditions alleged by Plaintiff are not supported when Plaintiff seems to be voluntarily abstaining from effective treatment.  (Tr. 32, 114, 460).

The ALJ also found that Dr. Tuck's opinion was inconsistent with Plaintiff's own testimony and statements.  (Tr. 31).  To support this position, the ALJ cited testimony by Plaintiff that she: (1) has bad days with her impairments only 4-5 times per month, and the rest of the time her pain level

is just a 2 out of 10; (2) could lift at least ten pounds and perform activities of daily living; and (3) could sit for 30-45 minutes before standing up, but did not testify that she could not sit for at least six hours of an eight hour day.  (Tr. 457-60).  The ALJ also cited the fact that Plaintiff completed a long flight to Australia and reported no problems to any of her physicians.  (Tr. 31).

The ALJ cited these reasons for why he did not grant dispositive weight to Dr. Tuck's opinion regarding pain and fatigue.  This court finds that the ALJ properly considered Dr. Tuck's opinion and properly articulated his reasons for not granting it dispositive weight.  This court finds that the ALJ based his decision on substantial evidence and, on this point of argument, that decision is due to be affirmed.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination.  The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____5th_____ day of March, 2009.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

11